**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GREGORY PACKAGING, INC.,

                           Plaintiff,

       v.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

                        Defendant.

**OPINION**

Civ. No. 2:12-cv-04418 (WHW) (CLW)

**<u>Walls, Senior District Judge</u>**

This insurance coverage dispute arises out of a property insurance policy which Defendant Travelers Property Casualty Company of America ("Travelers") issued to Plaintiff Gregory Packaging, Inc. ("Gregory Packaging"). Subject to limitations and exclusions, the policy covered "direct physical loss of or damage to" Gregory Packaging's property. In July 2010, ammonia was released inside one of Gregory Packaging's facilities. Gregory Packaging now moves for partial summary judgment on the issue of whether it incurred "direct physical loss of or damage to" property from the ammonia release. Without oral argument under Federal Rule of Civil Procedure 78(b), the Court finds that Gregory Packaging sustained "direct physical loss of or damage to" property and grants Gregory Packaging's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Gregory Packaging, headquartered in Newark, New Jersey, makes and sells juice cups. Pl.'s Mem. 1, ECF No. 40; Pl.'s Statement of Material Facts ("Pl.'s SMF") ¶ 1, ECF No. 41; Def.'s Opp. 4, ECF No. 49; Def.'s Responsive Statement of Material Facts ("Def.'s Resp. SMF") ¶ 1, ECF No. 49-1. In 2009, Gregory Packaging decided to build a new juice packaging facility and purchased a building for that purpose on Amlajack Boulevard in Newnan, Georgia. Pl.'s Mem. 2;

**NOT FOR PUBLICATION**

Pl.'s SMF ¶ 7; Def.'s Opp. 4; Def.'s Resp. SMF" ¶ 7. Travelers issued Gregory Packaging a property insurance policy for the period running from February 28, 2010 to September 11, 2010. Pl.'s Mem. 5; Def.'s Opp. 13.

The insurance policy states that Travelers "will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss." Pl.'s SMF ¶ 3; Def.'s Resp. SMF ¶ 3. It defines "Covered Property" to include "designated buildings or structures at the premises described in the Declarations, including: . . . (2) Fixtures . . . [and] (3) Machinery and equipment permanently attached to the building . . . ." Pl.'s SMF ¶ 4; Def.'s Resp. SMF ¶ 4; Cert. of Robert D. Chesler ("Chesler Cert.") ¶ 3, Ex. A, Form DX T1 00 03 98. The policy's "Declarations" indicate, and the parties have not disputed, that the policy covered the buildings and structures Gregory Packaging purchased in Newnan, Georgia. Chesler Cert. ¶ 3, Ex. A, Form IL T0 03 04 96.[1]

Gregory Packaging needed to install machinery and equipment in its new building before it could begin producing juice cups there. Pl.'s Mem. 2; Def.'s Opp. 4-5. Gregory Packaging installed a refrigeration system at the facility which used anhydrous ammonia as its refrigerant. Pl.'s SMF ¶¶ 8-9; Def.'s Resp. SMF ¶¶ 8-9. By July 20, 2010, the basic installation of the refrigeration system was complete, and Gregory Packaging's contractors from Uni-Temp Refrigeration, Inc. ("Uni-Temp") were working to start the refrigeration system so that it could begin operating as needed for the juice packaging process. Pl.'s Mem. 2-3; Def.'s Opp. 5-6. During the start-up process on July 20, 2010, ammonia was released from the refrigeration system into the facility. Pl.'s SMF ¶ 11; Def.'s Resp. SMF ¶ 11. The ammonia severely burned a Uni-Temp

---

[1] The issue of whether the physical loss or damage was caused by or resulted from a "Covered Cause of Loss," as required for coverage under the policy, is not at issue in this motion.

**NOT FOR PUBLICATION**

employee who was working at or near the site of the discharge. Pl.'s Mem. 4; Pl.'s SMF ¶ 13; Def.'s Resp. SMF ¶¶ 11, 13; Def.'s Opp. 1.

The parties contest what caused the ammonia release. Gregory Packaging asserts that it was caused by or coincided with an "explosion," which ejected the ammonia from the refrigeration system in liquid and gaseous forms. Pl.'s Mem. 3-4. Travelers asserts that there was no explosion, and that the ammonia was released when the Uni-Temp employee attempted to fix a leaking union in the refrigeration system but "turned the nut on the union the wrong way, loosening it instead of tightening it," and thereby "caused a larger amount of ammonia to escape from the union." Def.'s Opp. 7-8.

The parties agree that the facility was evacuated after the ammonia release and that various governmental agencies arrived on the scene. Pl.'s Mem 4; Chesler Cert. ¶ 4, Ex. B at 206; Def.'s Opp. 8. They also agree that Gregory Packaging hired a remediation company, Rhino Services, LLC, to dissipate the ammonia from the building. Pl.'s SMF ¶ 15; Def.'s Resp. SMF ¶ 15.

The parties dispute how long it took Rhino Services to remediate the ammonia presence in the building. Gregory Packaging asserts that it took approximately one week. Pl.'s Mem. 4. Travelers states that "Rhino worked at the Newnan Facility for approximately 5 days" and points to witness testimony which Travelers argues shows that "it took considerably less than 5 days for the ammonia levels to reach a safe level for occupancy." Def.'s Opp. 8. Despite the parties' argument about how long it took to dissipate the ammonia, Travelers' statements about the remediation acknowledge that an unsafe amount of ammonia was released into the building, that it remained present in the building for some amount of time, and that it was remediated.

Gregory Packaging filed this action in July 2012, alleging that the ammonia release "resulted in the loss of property and an interruption of business" which qualified for coverage

**NOT FOR PUBLICATION**

under its property insurance policy. Compl. ¶ 10. Gregory Packaging alleges that Travelers breached the parties' insurance contract by rejecting Gregory Packaging's claim, *id.* ¶¶ 18-23, and seeks a declaratory judgment that Travelers is obligated to pay for Gregory Packaging's damages. *Id.* ¶¶ 14-17. Travelers disputes Gregory Packaging's assertions, and indicates that it denied Gregory Packaging's insurance claim because Gregory Packaging did not suffer physical loss or damage to covered property and because the loss was subject to a specific exclusion under the policy's terms. Def.'s Opp. 14.

Gregory Packaging now moves for partial summary judgment on the sole issue of whether it incurred "direct physical loss of or damage to" property. Pl.'s Mem. 1. Gregory Packaging argues that "the explosion made the ammonia refrigeration system inoperable and rendered the Georgia Plant uninhabitable," thus inflicting direct physical loss of and damage to its property. *Id.* at 1, 13.

Travelers opposes Gregory Packaging's motion on multiple grounds. First, Travelers disputes that Gregory Packaging sustained "direct physical loss of or damage to" property as those policy terms are construed under New Jersey and Georgia law. *Id.* at 17-25. Advocating for a specific interpretation of relevant law, Travelers asserts that "physical loss or damage" necessarily involves "a physical change or alteration to insured property requiring its repair or replacement." *Id.* at 18. Travelers emphasizes that Gregory Packaging's "inability to use the plant . . . as it might have hoped or expected" does not constitute direct physical loss or damage. *Id.* Second, Travelers argues that there are genuine disputes of material fact "that relate to whether the property suffered the physical loss or damage alleged." Def.'s Opp. 25-30. Third, Travelers contends that partial summary judgment is inappropriate on the issue of whether Gregory Packaging sustained direct physical loss or damage without simultaneously establishing the cause of any loss or damage and resolving other related factual matters. *Id.* at 15-17. The Court addresses these arguments.

NOT FOR PUBLICATION

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Id.* at 248. A dispute as to a material fact is genuine when a rational trier of fact could return a verdict for the non-movant. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Once the movant has carried its initial burden to demonstrate the absence of a genuine issue of material fact, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Where there is a genuine dispute as to a material fact, the court must view that fact in the light most favorable to the non-movant. *Scott*, 550 U.S. at 380.

## DISCUSSION

### 1. There Is No Genuine Dispute that the Ammonia Release Temporarily Incapacitated Gregory Packaging's Facility

There is no genuine dispute that the ammonia release on July 20, 2010 rendered Gregory Packaging's facility physically unfit for normal human occupancy and continued use until the

**NOT FOR PUBLICATION**

ammonia was sufficiently dissipated. Travelers admits that there was an ammonia release from the refrigeration system into the facility, Pl.'s SMF ¶ 11; Def.'s Resp. SMF ¶ 11, and that Gregory Packaging hired Rhino Services to dissipate the ammonia in the building. Pl.'s SMF ¶ 15; Def.'s Resp. SMF ¶ 15. Travelers even acknowledges that the purpose of Rhino Services' remediation work was to reduce the ammonia gas "to reach a safe level for occupancy." Def.'s Opp. 8.

Beyond the parties' apparent agreement that the ammonia rendered the building temporarily unfit for occupancy and use, Gregory Packaging has put forth substantial evidence that the ammonia discharge physically incapacitated its facility. Multiple witnesses have testified that the facility was evacuated after the ammonia release because it was unsafe. Edward Gregory, President of Gregory Packaging, testified that government authorities "evacuated the area for a mile radius" after the incident. Chesler Decl. ¶ 4, Ex. B at 203. Paul Heerema, Vice President of the firm Gregory Packaging hired to install the refrigeration system, testified that "[t]he fire department took charge and set up a hot zone, and no one could enter the building." *Id.* ¶ 7, Ex. E at 200. Mr. Heerema also stated that "the fire department directed us that they would not allow anyone in the building" after the incident occurred or the following morning. *Id.* ¶ 7, Ex. E at 125, 128, 200. In a statement which Mr. Gregory, according to his testimony, wrote two days after the incident, he recounted that "Rick Anthony of Uni-Temp . . . returned to the interior of the freezer dressed in a safety suit in an effort to direct the fire crew to the proper valves needed to turn off any more leaks." Cert. of Robert F. Cossolini ("Cossolini Cert.") ¶ 4, Ex. C; Chesler Decl. ¶ 4, Ex. B at 202-04. A Uni-Temp "Work Order Summary" also indicates that the ammonia level in the facility was too high for normal human occupancy. The Uni-Temp work order summary states: "on 7-21-10 still could not get into the building until the ammonia level came down in the building." Cossolini Cert. ¶ 6, Ex. E at 2.

NOT FOR PUBLICATION

Multiple witnesses have also testified that Rhino Services was hired to dissipate the ammonia in order to make the facility safe for occupancy. In his written account of the incident, Mr. Gregory stated that "the Fire Chief told me that we would need to hire an outside environmental clean-up service," which led to Gregory Packaging's engagement of Rhino Services for remediation. Cossolini Cert. ¶ 4, Ex. C. Gabriel Rios, manager of the facility, testified that Gregory Packaging "had to air the property because of the ammonia leak. The vapors. And we hired a company called Rhino. Rhino was to do the cleanup. . . . Wash down anything with water. They were trying to get rid – they had brought in dry ice, trying to neutralize the stuff inside the plant. Set up fans and all that." Cossolini Cert. ¶ 3, Ex. B at 88.

Travelers has not put forth any evidence that contradicts the conclusion that the ammonia discharge incapacitated Gregory Packaging's facility until the ammonia was dissipated.

**2.  The Ammonia Discharge Inflicted "Direct Physical Loss of or Damage to" Gregory Packaging's Facility Under Either New Jersey or Georgia Law**

Because there is no genuine dispute that the ammonia discharge temporarily incapacitated Gregory Packaging's facility, the Court will determine as a matter of law whether the ammonia-induced incapacitation constituted "direct physical loss of or damage to" the facility within the meaning of that phrase in the insurance policy. The phrase "direct physical loss of or damage to" is not defined by the policy.

a.  <u>Choice of Law</u>

This case invokes the Court's diversity jurisdiction and, as such, the Court must first determine which state's substantive law applies. Gregory Packaging is headquartered in Newark, New Jersey, but the ammonia release occurred at its facility in Georgia. Gregory Packaging asserts that there is no conflict between New Jersey and Georgia law regarding the interpretation of

7

**NOT FOR PUBLICATION**

insurance contracts and that, under federal court choice of law principles, the Court should apply New Jersey law to this case. Pl.'s Mem. 6-8. Travelers does not address the choice of law issue.

A federal court applies the choice of law rules of its forum state—here, New Jersey—in order to determine which state's law controls in cases under its diversity jurisdiction. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). New Jersey applies a two-step choice of law test. *P.V. v. Camp Jaycee*, 962 A.2d 453, 460-61 (N.J. 2008). In the first step, the court decides if an "actual conflict" exists between potentially applicable laws by determining "whether there is a distinction between them." *Id.* at 460; *Lebegern v. Forman*, 471 F.3d 424, 428-30 (3d Cir. 2006) (internal citations omitted). If there is no conflict or only a "false conflict," where the potentially applicable laws would produce the same result on the particular issue presented, the court avoids the choice of law question and applies New Jersey law. *Lebegern*, 471 F.3d at 428; *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997). If there is an actual conflict, the court proceeds to the second step and must determine which jurisdiction has the "most significant relationship to the claim." *Camp Jaycee*, 962 A.2d at 460.

Since it is possible that either New Jersey or Georgia law could govern this motion, the Court must first determine whether an actual conflict exists between New Jersey and Georgia law.

### b. Application of New Jersey Law

Under New Jersey law, "an insurance policy should be interpreted according to its plain and ordinary meaning." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992). "When the meaning of a phrase is ambiguous, the ambiguity is resolved in favor of the insured and in line with an insured's objectively-reasonable expectations." *Id.* (internal citations omitted).

Several courts have construed the terms "physical damage" and "physical loss or damage" under New Jersey law to resolve insurance disputes. In doing so, the Court of Appeals for the Third

**NOT FOR PUBLICATION**

Circuit noted that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure." *Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002). While structural alteration provides the most obvious sign of physical damage, both New Jersey courts and the Third Circuit have also found that property can sustain physical loss or damage without experiencing structural alteration.

In *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, the New Jersey Appellate Division considered a case where physical damage was temporary and non-structural: the dispute turned on whether an electrical grid had experienced "physical damage" during a blackout. 968 A.2d 724, 727 (N.J. Super. Ct. App. Div. 2009). The Court determined that the electrical grid "was 'physically damaged' because, due to a physical incident or series of incidents, the grid and its component generators and transmission lines were physically incapable of performing their essential function of providing electricity." *Id.* at 734. The Court acknowledged that there was disputed evidence that the grid had experienced structural damage to "assorted individual pieces" of equipment, but explicitly rested its decision on "the loss of function of the system as a whole." *Id.*

The *Wakefern* court supported its holding by looking to the Colorado Supreme Court's decision in *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968), which held that a church building's saturation with gasoline vapors constituted a "direct physical loss" when the building could no longer be occupied or used. *Wakefern*, 968 A.2d at 735-36. The *Wakefern* court also relied on other cases which it described as "likewise accept[ing] the view that 'damage' includes loss of function or value." *Wakefern*, 968 A.2d at 735-36 (citing cases). The

**NOT FOR PUBLICATION**

*Wakefern* decision indicates that property's temporary and non-structural loss of function is recognized as direct physical loss or damage under New Jersey law.

      In *Port Authority*, the Third Circuit similarly found that physical contamination of a building rendering it useless would constitute physical loss under New Jersey law. *Port Authority*, 311 F.3d at 236. Travelers argues that *Port Authority* held that physical loss or damage cannot occur without physical alteration and urges this Court to adopt its interpretation of the *Port Authority* holding as the proper enunciation of New Jersey law.[2] Def.'s Opp. 18-19. The Court rejects this invitation because Travelers' reading of *Port Authority* contradicts the opinion's plain text. The Circuit wrote that if "the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner" which would constitute "physical loss." *Port Authority*, 311 F.3d at 236. The opinion comports with the New Jersey Appellate Division's holding in *Wakefern* that property can be physically damaged, without undergoing structural alteration, when it loses its essential functionality.

      In other jurisdictions, courts considering non-structural property damage claims have found that buildings rendered uninhabitable by dangerous gases or bacteria suffered direct physical loss or damage. Applying Pennsylvania law in *Motorists Mutual Ins. Co. v. Hardinger*, the Third Circuit found that the bacteria contamination of a home's water supply constituted a "direct physical loss" when it rendered the home uninhabitable. 131 Fed.Appx. 823, 825-27 (3d Cir. 2005). *See also Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (finding

---

[2] This Court's application of New Jersey law is dictated not by the Third Circuit but by the Supreme Court of New Jersey. *See Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996). The Third Circuit has directed that "[i]n the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." *Id.*

**NOT FOR PUBLICATION**

that, under Massachusetts law, an unpleasant odor rendering property unusable constituted physical injury to the property); *TRAVCO Ins. Co. v. Ward*, 715 F.Supp.2d 699, 709 (E.D.Va. 2010), aff'd, 504 F. App'x. 251 (4th Cir. 2013) (finding "direct physical loss" where "home was rendered uninhabitable by the toxic gases" released by defective drywall).

In the present case, there is no genuine dispute that the ammonia release physically transformed the air within Gregory Packaging's facility so that it contained an unsafe amount of ammonia or that the heightened ammonia levels rendered the facility unfit for occupancy until the ammonia could be dissipated. The Court finds that the ammonia discharge inflicted "direct physical loss of or damage to" Gregory Packaging's facility, as that phrase would be construed under New Jersey law by the New Jersey Supreme Court, because the ammonia physically rendered the facility unusable for a period of time.

      c.  <u>Application of Georgia Law</u>

The Court must also determine how this motion would be resolved under Georgia law to discover whether an actual conflict exists between Georgia and New Jersey law.

Under Georgia law, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Richards v. Hanover Ins. Co.*, 299 S.E.2d 561, 563 (Ga. 1983). "Any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible." *Id.* (internal citations omitted).

Although the Georgia Supreme Court has not construed the terms at issue here, the Court of Appeals of Georgia has held that direct physical loss or damage occurs when there is "an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous

**NOT FOR PUBLICATION**

event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317, 319-20 (Ga. Ct. App. 2003) (citing cases). In the case establishing that standard, the court found that AFLAC had not sustained physical loss or damage because its alleged property damage was merely a defect in its computer systems that had "existed from the time the systems were created by design" and because AFLAC did not allege that any fortuitous event had changed the computer systems. *Id.* at 320.

There is no apposite Georgia case dealing with the physical contamination of a building by harmful gas, but the incident at Gregory Packaging's facility meets the standard set out in *AFLAC*. The ammonia discharge was occasioned by a fortuitous event, whether it was an explosion or worker's error, which produced an actual change in the content of the air in Gregory Packaging's facility. Before the ammonia discharge, the facility was in a satisfactory state for human occupancy and continued build-out, but after the ammonia discharge its state was unsatisfactory and required remediation. The Court finds that Gregory Packaging would be entitled to partial summary judgment that the ammonia discharge caused "physical loss of or damage to" its facility under Georgia law because there is no genuine dispute that the ammonia release physically changed the facility's condition to an unsatisfactory state needing repair.

Because the Court finds that Gregory Packaging would be entitled to partial summary judgment under either New Jersey or Georgia law, there is a false conflict in the choice of law. As such, the Court need not resolve the choice of law question and will apply New Jersey law to decide this motion. As stated earlier, the Court finds that the ammonia discharge inflicted "physical loss of or damage to" Gregory Packaging's facility under New Jersey law.

NOT FOR PUBLICATION

### 3.  No Genuine Dispute Exists to Preclude the Court from Granting Partial Summary Judgment

Travelers argues that genuine disputes of material fact preclude the Court from granting Gregory Packaging's motion. Def.'s Opp. 25-30. Gregory Packaging responds that "Travelers' disputed facts are immaterial" because "[i]n this partial summary judgment motion, there is one material fact: the Georgia plant was evacuated and rendered temporarily uninhabitable." Pl.'s Reply 6, ECF No. 50. The Court agrees that the factual disputes Travelers has identified do not challenge the central fact necessary to resolve this motion—that the ammonia release temporarily incapacitated Gregory Packaging's facility.

First, Travelers argues that there is a genuine dispute as to whether the facility "suffered an explosion." Def.'s Opp. 26. This dispute is immaterial to the present motion. What matters for this motion is that the ammonia was released, and the parties do not dispute that it was.

Second, Travelers asserts that there is genuine dispute that the refrigeration system in Gregory Packaging's facility was rendered inoperable and required repair.[3] Def.'s Opp. 27. While there may be a genuine dispute as to the ammonia discharge's impact on the refrigeration system, the Court need not find that the refrigeration system sustained direct physical loss or damage to resolve Gregory Packaging's motion. Because the Court has found that there is no genuine dispute that the facility itself was temporarily incapacitated by the ammonia release and resolves this motion on that basis, the Court does not address the question of whether the refrigeration system was also damaged. It is sufficient for this motion to find that the facility incurred direct physical loss or damage.

---

[3] Relatedly, Travelers also asserts that there is genuine dispute as to whether there was an "explosive separation" of pipes in the refrigeration system and as to whether certain pipes became misaligned. Def.'s Opp. 29-30.

**NOT FOR PUBLICATION**

Third, Travelers says that it disputes that "the plant was rendered inoperable" after the ammonia release. Def.'s Opp. 28. But its dispute does not actually challenge the fact that the facility was temporarily incapacitated by the ammonia. Rather, Travelers "assumes that Plaintiff's allegation that 'the plant was rendered inoperable after the explosion' is a reference to the alleged 'delay' in the Newnan Facility becoming fully operational." Def.'s Opp. 28. Proceeding from this assumption, Travelers' argument focuses on whether the ammonia release delayed the facility's readiness for juice packaging operations. *See* Def.'s Opp. 28-29. Any such delay is a separate issue which does not need to be resolved for the Court to decide this motion.

The Court finds that there is no genuine dispute precluding the Court from resolving, as a matter of law, that the ammonia-induced incapacitation constituted "direct physical loss of or damage to" Gregory Packaging's facility.

### 4. Partial Summary Judgment is Appropriate

Travelers also argues that granting partial summary judgment on the issue of physical loss or damage is inappropriate because establishing physical loss or damage is not sufficient to determine that Gregory Packaging is entitled to recover under the insurance policy. Def.'s Opp. 15-17. Travelers argues that factual disputes exist as to whether any physical damage that did occur arose from a "Covered Cause of Loss," as is required under the policy, and that it would be imprudent for the Court to decide the issue of whether physical loss or damage occurred in isolation. *Id.* The Court disagrees. There is no genuine dispute of material fact that the ammonia discharge caused the physical incapacitation of the facility, and resolving the issue of physical damage now does not alter the fact that Gregory Packaging must still prove that the damage was caused by or resulted from a "Covered Cause of Loss" and was not excluded under the policy's terms.

**NOT FOR PUBLICATION**

**CONCLUSION**

Gregory Packaging's motion for partial summary judgment is granted. The Court finds that Gregory Packaging incurred "physical loss of or damage to" its Newnan, Georgia facility when ammonia gas was discharged into the facility's air on July 20, 2010 and rendered the facility temporarily unfit for occupancy.

Date: November 25, 2014

/s/ William H. Walls_____
United States Senior District Judge
